INTERNATIONAL BUILDING AND LOAN ASSOCIATION v. W. S. HARDY.

Delivered October 7, 1896.

**Vendor's Lien—Payment of Purchase Money Debt—Subrogation—Homestead Right.**

H. applied to a loan association of which he was a member for money with which to pay for land that he had contracted to buy, but the association had no funds then on hand, and therefore he obtained the loan from R. H., a friend, who reserved no lien to secure it, and H. took deed and occupied the property as his homestead. Afterwards the association advanced the money, reimbursing R. H. and taking a deed of trust on the property from H. and wife, which recited that the money "is by us used as the purchase money for the property herein described." Held, that the lien thus created could not override the homestead right, no such vendor's lien having been originally contracted for with R. H. or the association.

APPEAL from Bexar. Tried below before Hon. S. G. NEWTON.

*B. L. Aycock*, for appellant.—A vendor of real estate has a vendor's lien upon such real estate for the purchase money until the purchase money is paid, whether the lien is retained in the deed or not. Therefore, if defendant Hardy purchased the property in controversy from Asten, and plaintiff agreed to loan defendant the money with which to pay such purchase money, and defendant agreed the plaintiff should have such vendor's lien therefor, and in pursuance thereof plaintiff and defendant agreed that Holland should advance such purchase money until plaintiff could have a meeting of its directors, and pay out the money and then plaintiff should repay Holland the money, and did so repay it, plaintiff was entitled to a foreclosure. Flanagan v. Cushman, 48 Texas, 241; Perry v. Woodson, 61 Texas, 229; Irvin v. Garner, 50 Texas, 48; Clements v. Lacy, 51 Texas, 150.

*Leo Tarlton* and *C. A. Keller*, for appellee.—A deed of trust executed by both husband and wife, placed on their homestead for borrowed money, after purchase price has been paid in full to the vendor, and no reservation of the vendor's lien has been retained and contracted for by the person who may have loaned the money actually paid to the vendor; a statement in such deed of trust that the debt attempted to be secured is for the purchase price, is of no effect, though money loaned may have been used by the husband and wife to pay off a previous indebtedness incurred by them, which was for money used in repaying such indebtedness going into the purchase price. There must be at the time the title passes, an intention of the vendor or party furnishing the money entering into the purchase price to retain the lien; and no distinct subsequent loan, not part of the purchasing transaction, can revive the vendor's lien, no matter how short a period of time may exist between the sale and loan, nor on what indebtedness the borrowed money was used. Malone v. Kauffman, 38 Texas, 454; Gaylord v. Loughridge, 50 Texas, 573; Boehl v. Wadgymar, 54 Texas, 589; Ruhl v. Kauffman, 65 Texas, 723; Morris v. Giesecke, 60 Texas, 633; Perry on

Trusts, sec. 133; 2 Wash. Real Prop., p. 9, sec. 17; 1 Jones on Mortgage, sec. 212, top p. 231.

JAMES, CHIEF JUSTICE.—The facts presented by the record are substantially these: Hardy purchased a house and lot of one Asten at an auction sale for about $800, on March 25, 1885. He had $100, which he paid on the purchase price, and he was to pay the balance by April 12, or forfeit the hundred dollars. He did not have the balance. Being a stockholder in appellant association, he made application to it for the money. The time in which to make the deferred payment expired, and the money was not advanced by the association because it had no money then in the treasury. Hardy then borrowed the necessary sum from Richard Holland, another stockholder, and with this money he paid Asten and got the deed, taking the same in the name of his wife, and moved upon the place with his family. Afterwards the association let him have the money, paying it to Holland, reimbursing him and taking as security a deed of trust on the property signed by both Hardy and his wife, which contained the recital that the money "is by us used as the purchase money for the property herein described."

The evidence is uncontradicted that when Holland let Hardy have the money to complete payment for the lot, it was a loan by him to Hardy on interest, and there is nothing to show that he loaned it on behalf of the association, or that he had a right to look to the association for payment. There is a statement in Holland's testimony, "that the money was to be paid back by Dr. Lindner (the secretary of the association) as soon as it came in." He testified further that he was to be paid back by money that was collected from the association; that it was his own money he loaned Hardy; that he loaned him the money as the act of friendship and accommodation, and on his own responsibility; that it was to be paid back as soon as he (Hardy) got it from the association; that he took Hardy's note for the money without any understanding with him as to a lien. The effect of the testimony of Holland is that he made a personal loan to Hardy of the money; that he expected payment from the association or by money gotten from the association; but neither in his testimony nor elsewhere in the record is there any evidence to show that the association procured him to advance the money, or that it obligated itself to repay him. The testimony of Hardy upon these matters is substantially the same as Holland's, and the record nowhere discloses otherwise. There is evidence that would lead to the conclusion that the money advanced by the association was advanced in pursuance of the original application of Hardy, and of a plan to ultimately get the money from it to settle the purchase money and to secure it by a purchase money lien.

It clearly appeared that upon obtaining the deed, and previous to the execution of the deed of trust to the association, plaintiff moved upon the lot with his family, and it became invested with the character of homestead.

The building and loan association had caused the property to be sold under its deed of trust, after the death of the wife, and now asserts title under the trustee's deed, on the ground that the association had a lien with the attributes of a vendor's lien. The verdict was in favor of Hardy, and if such verdict be the correct one upon the testimony adduced, it is of no use to deal with other questions, for such deed of trust must have had the force of a vendor's lien in order to prevail over the right of homestead.

To enable a third party who advances money for the purpose of paying purchase money, or discharging a vendor's lien, to have a similar lien for his security, he must have contracted with the debtor, at the time, for a lien. Otherwise the relation of mere debtor and creditor would exist. Ruhl v. Kaufman, 65 Texas, 723; Johnson v. Townsend, 77 Texas, 639. If the lien be contracted for subsequently, it will not create or revive a lien.

The uncontradicted facts disclose that the money which went to pay off the purchase money (whether it was given to Hardy to apply, or Holland himself paid it to the vendor is immaterial in this case) was a personal loan of the money by Holland to Hardy, without any provision or understanding that the former or any one should have a lien. The money was applied, thereby discharging the purchase money, and the deed obtained. There is nothing to show that the association had procured Holland to do this in his own behalf, for it cannot be contended in the evidence before us that the association became at that time in any manner obligated to restore the money to Holland. The evidence excludes the liability of the association to Holland, and excludes any theory upon which it could be said that it was bound to repay Holland or advance any money to Hardy. When the purchase money was paid, and the deed made, the vendor had no lien, Holland had no lien, and had contracted for none, and the association could not therefore derive any from Holland; nor could it from its own acts, having at that time advanced no money, and being under no contract with any one to do so. It seems clear to us on these facts that no vendor's lien could arise or be created afterwards.

The only evidence of any intention to give the association a lien, consists of the fact that when it repaid Holland, it took a deed of trust from Hardy and wife, Hardy testifying that he considered it was for purchase money. That this would be sufficient of itself to prove that, at a prior date (the time Holland advanced the money), there existed an intention to give a lien for this advance, we doubt; but it certainly would not suffice to prove that at such previous date Hardy had contracted to give the association a lien,—as the uncontradicted testimony shows that no lien was contracted with Holland, and no contract at all was entered into with the association until after the vendor had been fully paid with Holland's money.

The evidence amounts to this: That it was expected that Hardy would get the money from the association to pay for the property, by a certain

date, which expectation failed, whereupon he borrowed the amount from a friend and paid for the property without any assistance from the association. The latter was under no contract with Holland or Hardy to furnish any money at that time, but Hardy and Holland expected that the money to pay the note given Holland would come from the association when it was in funds, and the officers of the association probably had the same thing in view. Hardy and the association afterwards perfected this arrangement. Holland was paid by the latter, and Hardy and wife undertook to secure it by the deed of trust in question.

Suppose the association had failed for any reason to let Hardy have the money. It is not claimed that the association had no discretion to refuse Hardy a loan, and it clearly had entered into no contract which bound it to do so. Had it refused Hardy the money, how would the case have stood? He would have owed Holland, but no one would have had a lien on the property. That a lien of any kind would have existed, no one would claim. This being the case, it seems one in which it was sought to create such a lien after satisfaction of the purchase money.

It may have been, had the association procured Holland to advance the money for it, it would have been held to occupy the position of the person that really furnished the money, and with further proof that there was then an agreement for a lien which was afterwards given, it would have had a lien in the nature of a vendor's lien. But the evidence even fails to show that the association was acting through Holland.

We must therefore hold that the deed of trust was not given under circumstances that vested the association with a lien superior to the homestead right, and that the verdict should have been, as it is, for the defendant.

*Affirmed.*